Woodrow Wilson Lee sued Dr. Martin P. McCann, a pathologist, alleging that Dr. McCann had negligently diagnosed him with cancer; his wife, Frances Louise Lee, sued Dr. McCann for damages for loss of consortium. Mr. Lee died before trial, and Mrs. Lee, as executrix of her husband's estate, was substituted as plaintiff as to the claim Mr. Lee had filed. The complaint was amended to allege also that Dr. McCann had wrongfully caused the death of Mr. Lee. All three claims against Dr. McCann went to trial. The jury awarded the plaintiff $1,000,000 in compensatory damages on the negligent diagnosis claim and $1,000,000 in compensatory damages on the loss of consortium claim. The jury returned a verdict in favor of Dr. McCann on the wrongful death claim.
Dr. McCann moved for a judgment notwithstanding the verdict, a new trial, or a remittitur of the damages, contending that the damages awarded were excessive. The trial court agreed in part and conditioned its denial of Dr. McCann's motion for a new trial upon Mrs. Lee's acceptance of a $750,000 remittitur of the compensatory damages award on the loss of consortium claim, reducing that award to $250,000. Mrs. Lee accepted the remittitur on the condition that Dr. McCann not appeal; however, Dr. McCann did appeal. Mrs. Lee then cross appealed from the order requiring a remittitur.
A jury's verdict is presumed correct and will not be disturbed unless it is plainly erroneous or manifestly unjust.Crown Life Ins. Co. v. Smith, 657 So.2d 821 (Ala. 1994); AlpineBay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162 (Ala. 1988). In addition, a judgment based upon a jury verdict and sustained by the denial of a post-judgment motion for a new trial will not be reversed unless it is plainly and palpably wrong. Ashbee v.Brock, 510 So.2d 214 (Ala. 1987). Because the jury returned a verdict for the plaintiff, any disputed questions of fact must be resolved in her favor, and we must presume that the jury drew from the facts any reasonable inferences necessary to support its verdict. State Farm Auto. Ins. Co. v. Morris,612 So.2d 440, 443 (Ala. 1993). In short, in reviewing a judgment based upon a jury verdict, this Court must review the record in a light most favorable to the appellee. Continental Cas. Ins.Co. v. McDonald, 567 So.2d 1208, 1211 (Ala. 1990).
In May 1991, Woodrow Lee, a 78-year-old man, was admitted to Phenix Medical Park Hospital with pneumonia. While there, he experienced some rectal bleeding. His physician called in Dr. Howard Weldon, a surgeon, to determine the cause of the bleeding. Dr. Weldon performed a rectal examination, and during that exam he felt a "questionable mass" inside Mr. Lee's rectum. While performing a colonoscopic examination, Dr. Weldon observed a "cauliflower-appearing" mass on the wall of the rectum. Dr. Weldon suspected cancer and took biopsies of the mass. On May 31, 1991, the biopsy material was submitted to Dr. McCann, the pathologist working at the hospital. After examining the tissue specimen submitted, Dr. McCann issued a report with a diagnosis of "mucin producing adenocarcinoma, biopsies of rectum." Specifically, Dr. McCann's diagnosis was that Mr. Lee had a malignant tumor in his rectum. On that same date, Dr. McCann left for a vacation. Based upon the report issued by Dr. McCann, Dr. Weldon told Mr. Lee that he had cancer and needed surgery. Dr. Weldon explained to Mr. Lee that this surgery would require the complete removal of his rectum, that he would no longer have any rectal function, and that he would have to defecate into a bag through a colostomy. Dr. Weldon explained the possible side effects of the surgery, including impotence and sexual dysfunction. Dr. Weldon performed the surgery on June 3, 1991. Dr. Weldon sent the tissue that was removed to the pathology department for further examination. Dr. R.C. Hamill, filling in for Dr. McCann, examined the specimens. However, he did not issue a pathology report. Dr. Weldon contacted Dr. Hamill to determine why he had not received a pathology report. Dr. Hamill explained that he was unable to find any cancer and wanted to wait for Dr. McCann to return from vacation before releasing a final report. After Dr. McCann returned, he also examined the tissue and found no evidence of cancer. Dr. McCann's *Page 660 
final diagnosis was an "atypical mucus hyperplasia." According to Dr. Weldon, had he known that there was no cancer, he would not have performed such radical surgery, but would have excised only the area of the mass, not the entire rectum.
On appeal, Dr. McCann contends that the jury's award of $1,000,000 in compensatory damages on the negligence claim and the compensatory damages award on the loss of consortium claim, even after it was remitted to $250,000, are excessive.
Dr. McCann argues that because compensatory damages are intended only to reimburse the plaintiff, the evidence in this case does not support the awards, because (1) there was no evidence of any medical bills, out-of-pocket expenses, lost earnings, or loss of earning capacity resulting from the alleged negligence; and (2) Mr. Lee lived only about eight months after the surgery, dying then of unrelated causes; Dr. McCann says that any pain, depression, or embarrassment Mr. Lee suffered was therefore insufficient to substantiate such an award.
The plaintiff claimed damages for Mr. Lee's mental anguish and emotional distress. We recognize that those are not items for which a precise amount of damages can be assessed. In considering whether a jury verdict awarding compensatory damages is excessive, we must view the evidence from the injured party's perspective and determine what the evidence supports in terms of the injured party's suffering. Foster v.Life Ins. Co. of Georgia, 656 So.2d 333 (Ala. 1994). In this case, evidence was presented regarding Mr. Lee's mental anguish and emotional distress. There was testimony that before the surgery the Lees had led an active life and Mr. Lee had been in good health for a man his age. After the surgery, he became depressed because of the need for the colostomy bag. His doctor prescribed anti-depressant medication to help alleviate his depression. Mr. Lee rarely left his home after the surgery because the colostomy bag on occasions came loose, smelled bad, and made noises caused by gas being emitted from the opening of the bag. After the surgery, Mr. Lee was impotent. Evidence indicated that Mr. Lee's mental anguish and emotional distress over the unnecessary surgery continued until his death approximately eight months later.
This Court has noted:
 " '[T]here is no yardstick by which compensatory damages for pain and mental suffering can be measured, and the ascertainment of the amount the plaintiff was due as compensation for these elements of damage must of necessity be left to the sound discretion of the jury, subject only to correction by the court for clear abuse or passionate exercise.' "
Industrial Chemical Fiberglass Corp. v. Chandler,547 So.2d 812, 820 (Ala. 1988), quoting W.S. Fowler Rental Equipment Co.v. Skipper, 276 Ala. 593, 603, 165 So.2d 375 (1963).
We hold that the trial court did not abuse its discretion in refusing to order a remittitur of the $1,000,000 compensatory damages award on the negligent-diagnosis claim and that it did not abuse its discretion in ordering a remittitur of $750,000 on the $1,000,000 award for loss of consortium, reducing that award to $250,000. The evidence indicated that Mr. Lee suffered severe mental anguish and depression, and that evidence was sufficient to support the jury's award on the negligent-diagnosis claim. While we cannot say that the trial court abused its discretion in not ordering a remittitur of that award, we agree with the trial court that the damages award for the loss of consortium claim was excessive. Mrs. Lee's evidence of mental anguish resulting from the loss of consortium was not sufficient to support a compensatory damages award equal to the award on the negligent-diagnosis claim. Therefore, the trial court properly ordered the remittitur.
The judgment is affirmed.
1940991 — AFFIRMED.
1941102 — AFFIRMED.
MADDOX, ALMON, KENNEDY, and BUTTS, JJ., concur.
HOUSTON, J., concurs specially.
HOOPER, C.J., dissents. *Page 661