26 So.2d 124

### ALABAMA GREAT SOUTHERN R. CO. v. CAMPBELL.

#### 7 Div. 849.

Court of Appeals of Alabama.

May 14, 1946.

See, also, ante, p. 179, 22 So.2d 616.

John A. Lusk, Jr., of Gadsden, for appellant.

Scott & Dawson and C. A. Wolfes, all of Fort Payne, for appellee.

**HARWOOD, Judge.**

The complaint in this case originally contained three counts, Nos. A, B, and C. Counts A and B were based on the alleged negligence of appellant in the operation of its train, and on the alleged negligence of the appellant's agents or servants. Count C was based on the alleged negligence of appellant in the maintenance of a road crossing its tracks. At the trial below the court gave the general affirmative charge in appellant's favor as to Counts A and B. A verdict in favor of appellee was returned by the jury on Count C.

At around 10 p. m. on the night of November 19, 1942 appellee's son was driving along the main highway between Attalla and Collinsville. This highway parallels appellant's tracks for a considerable distance. Near Keener a crossing road leads from the highway, across the appellant's tracks and into a pasture owned by one Hawkins, who owned land on both sides of the highway and railroad right of way. This crossing road runs some 60 or 75 feet before crossing appellant's tracks, it was built up some, and had been cherted. However photographs of the road received in evidence show it to be a one lane road, and overgrown with grass except for two tracks worn by vehicles. Where the road crosses the tracks appellant had placed slag between the rails, and a few feet on each side, but this slag came only about half way up the ball of the rail and the rail stood several inches higher. Appellee's son, upon reaching this crossing road drove down it, crossed the tracks, and drove into the pasture. He then turned around, and started back to the highway. In recrossing the tracks the front wheels of his car slipped and skidded when they hit the rail, and the car became stalled. One of appellant's freight trains shortly thereafter ran into the car demolishing it.

A highly material point in this case concerns the nature of this crossing road, that is whether it is a public or a private crossing. In Southern R. Co. v. Williams, 243 Ala. 429, 10 So.2d 273, our Supreme Court said that the character of such roads is to be determined by the nature of its use rather than the quantum.

Appellee's son testified that he saw tracks of wagons and some cars leading on from the point where he turned his car in Hawkins' pasture.

L. B. Payne, Section foreman for appellant, testified he had been familiar with this crossing for seven years, and that it connected the two portions of Hawkins' farm separated by the railroad. The only use made of the road known to this witness was by Hawkins or his tenants in going into the pasture or in hauling firewood. The road ended or played out in the pasture.

Appellee relies on Southern Ry. Co. v. Holder, 230 Ala. 500, 161 So. 513, and Southern R. Co. v. Williams, supra, in sustaining his contention that the crossing in the instant case was a public crossing. Concerning the nature of the crossing in the Holder case, supra, the court said: "But the crossing, though not a public one, did serve the public of that neighborhood, and the defendant held out an invitation to the public to cross at this particular place *by preparing and maintaining the same for the public convenience, and the proof shows it was so used."* (Italics ours.)

The crossing in the Williams case is described as follows [243 Ala. 429, 10 So. 2d 275]: "Some evidence tended to show this road through improved lands had been open to and used by the public without let or hindrance for some 40 years. That it chiefly benefited the owner and tenants on one large plantation, and those who had occasion to come and go in course of social or business relations with them, is not the test. *Evidence tended to show it was not a cul de sac, but connected with the main through highway at either end.* A neighborhood road, commonly so called, which furnishes an open outlet to the people of the neighborhood, and to 'the public in going into and out or passing through the neighborhood at will is none the less public because the public use is not very great." (Italics ours.)

■ The distinction between the facts establishing the public nature of the crossings in the above cases and those pertaining to the nature of crossing now under consideration is obvious. In our opinion the evidence submitted establishes this as a private crossing.

The crossing being in our opinion a private one, the appellee's son was thereon in the status of a bare licensee, rather than as an invitee, which status he would have occupied had the crossing been a public one.

■■ The railroad owed him no higher duty than that owed by any other land proprietor toward bare licensees. The duty owed by estate holders toward bare licensees is not an active one to safely maintain the premises. The bare licensee must accept the premises as he finds them. The only limitations imposed on landholders in such cases is that he must not set traps or pitfalls, nor wilfully or wantonly injure the licensee. Pratt Coal & Iron Co. v. Davis, 79 Ala. 308. A trap has been defined as "a danger which a person who does not know the premises could not avoid by reasonable care and skill." Hayward v. Drury Lane Theatre, 1917, 2 K.B. 899, at page 913. Traps must be intentionally set for the licensee. Hayward case, supra.

■ Certainly the crossing involved in this case could in nowise be regarded as a trap. In our opinion it must therefore follow that appellee (plaintiff below) failed to meet the burden of proof cast on him in such a case as this, assuming a valid complaint, with the resulting error on the part of the trial judge in refusing to grant the written affirmative charge requested by the appellant (defendant in the trial below).

Appellant's counsel also argues strenuously in his brief that the lower court erred in overruling appellant's demurrers to Count C of the complaint which was as follows: "The plaintiff claims of the defendant the other and further sum of one thousand dollars damages for this: that on or about the 19th day of November, 1942, the defendant was engaged in operating a railroad in Etowah County, Alabama, and at a point on said railroad in said county, and near the village of Keener, the defendant at said time and place maintained a crossing, made for and used by vehicles in crossing the tracks of the defendant's said road, and the plaintiff avers that at the time and place aforesaid, the defendant had negligently failed to maintain said crossing in good repair so that when the plaintiff's automobile was driven upon said tracks for the purpose of crossing same, it skidded or slid up the rail and became fast so that it would not pull its self off said track and that before it could be moved, one of the defendant's trains knocked it off demolishing it. And the plaintiff avers that his said injuries to said automobile and the damages here sued for are the proximate consequence of the negligence of the defendant in and about the maintenance of said crossing as aforesaid."

The only grounds of the demurrer that we believe warrant discussion are that (a) "for aught that appears the crossing was not one maintained by the defendant for the use or convenience of the public, and (b) it fails to aver any duty to maintain the crossing, insofar as the plaintiff was concerned." The two grounds are interrelated and will be discussed together.

■ The crossing is not described as a public crossing, nor are any facts set forth

which give the crossing the attributes of a public crossing. Construing the complaint as we must, most strongly against the plaintiff, we conclude that the complaint set forth a private crossing, and that appellee's son was thereon as a bare licensee. Walker v. Alabama T. & N. R. Co., 194 Ala. 360, 70 So. 125. The only duty owed the licensee was not to set a trap for him. No breach of this negative duty is alleged.

The essentials of a complaint based on a negligent act are stated in Tennessee Coal Iron & R. Co. v. Smith, 171 Ala. 251, 55 So. 170, 171, to be as follows: "Actionable negligence has been defined by this court to be 'the failure to discharge a legal duty to the person injured. If there is no duty, there is no negligence. Even if the defendant owes a duty to some one else, but does not owe it to the person injured, no action will lie. The duty must be to the person injured.' Southern Railway Co. v. Williams, 143 Ala. [212] 217, 38 So. [1013], 1014. In every action grounded solely on negligence there are three essential elements to a right of recovery. First, a duty owing from defendant to plaintiff; second, a breach of that duty; and third, an injury to plaintiff in consequence of that breach."

In light of the above doctrine it is our opinion that the grounds of the demurrer set forth above were well taken and the demurrer to Count C should have been sustained.

Reversed and remanded.